Mr. Thody made aircraft parts for military airplanes. He was charged with five counts of tax evasion. He pleaded not guilty and represented himself at trial. After the jury convicted him, he represented himself at sentencing. The district court sentenced him to 90 months and three years of supervised release. On appeal, I've made four challenges to Mr. Thody's sentence. To the guideline calculation, the restitution order, a special condition of supervised release, and to the procedural reasonableness of the above guideline sentence. In its brief, the government consented that the restitution order was erroneous, so I won't be addressing that issue. I'd like to start with the Let me ask you this. On that issue, the government suggested that we should remand that to see if you'd let the judge consider whether he wants to give that order as a condition of supervised release rather than as part of the sentence. Do you have any argument on that? I would like to say that the court can't do that, but unfortunately, that is exactly what the court did in the Nolan case, which is, I believe, controlling precedent. So in Nolan, the court did remand for the district court to consider it as restitution. I mean, it as a condition of supervised release. The district court increased the offense level two levels under 2T1.1B1 for Mr. Thody having failed to report the source of income exceeding $10,000 in any year from criminal activity. Mr. Thody objected, both in writing and orally, in the district court to this enhancement. He argued that the source of his income was the lawful production of aircraft parts. In the district court, the government argued that the source of the income was the tax evasion. On appeal, the government appears to have abandoned that argument. Instead, for the first time on appeal, the government argues that at least part of the source, or the source of some of Thody's income, was criminal activity, namely identification fraud under 18 U.S.C. 1028A7, and wire fraud under 18 U.S.C. 1343. The record does not support the government's arguments on appeal. The government... Was any of that discussed at sentencing? No, it was not. This is raised for the first time on appeal, raised in the government's response brief, and so I addressed it on reply. There's nothing in the PSR about that either, is there? Actually, there is something in the PSR. On page 2543 of the record, the PSR merely notes that there was a disagreement between business partners and that they agreed that Mr. Thody would cease using Middle Creek Construction. There's nothing about it regarding fraud. As I read that in the PSR, it almost seems to acknowledge that he did not pursue the use of this name or maybe the vendor number anymore after the objection? That is correct, Your Honor, and the government didn't object to that characterization in the pre-sentence report. Was that something else we could remand for consideration? Is that issue foreclosed as a possible basis for the sentencing because it wasn't supported factually the first time? I would argue that the court should not remand to give the government a second bite of the apple, especially when you're talking about a pro se defendant going up against a learned, experienced attorney. Go ahead. I'm sorry, Your Honor. Did you have a question, Judge Suffolk? Well, I was trying to think of what the relevance is. I must say that this non-lawyer did a better job than sometimes occurs with lawyers on preserving some of these issues, but nonetheless, why would that be relevant on whether to remand or not? He did a good job first time. Maybe he'll have you next time around and do even better, but why would that be a factor on whether to . . . I guess . . . . . . that the government . . . I mean, if the evidence is in the case, the enhancement was accepted by the judge first time through based on one argument, there could be other evidence, maybe not. What forecloses us from remanding on that? Is it a due process problem? Is it the record is closed and that's why it can't be looked at again? Just what's the point? Well, I think there's a concern about finality. I mean, the government made a strategic decision as the argument that it was going to make in the district court on a well-preserved argument. And so, if it's a matter of when we bring it up on appeal, the government gets to take it back down and try again. And then we appeal it again, and they come up with a new argument and it gets to go back down again. There are concerns about finality. Also, this court can exercise its supervisory authority under a doctrine such as judicial estoppel, where if the government makes a particular . . . takes a particular position in the district court, it's successful on that position and then changes it, comes up with an inconsistent position on appeal. This court then has the authority based on the prejudice to the defendant to not allow remand and re-argument. Also, Your Honor, the facts aren't there. I mean, this would be a remand for no purpose, because the facts aren't there to support this. That's why the pre-sentence report had as little as it did. Was it fraud to use this other person's number that was taking place when he had permission to do it? Is that fraud? No. Or when does it become fraud? If he uses it without permission, then it might be considered fraud? I'm going to answer your question, but I'm going to couch it first on the total sum of the testimony on this is 13 pages in the record, pages 1571 to 1584. And Duke Chandler, who owned Middle Creek Construction, he and Thode came up with an agreement where Thode would produce the aircraft parts, he would do up the packages to get the government contracts, he would get the cage code under Middle Creek, and all Mr. Chandler did was sign that first time around, and then he got 50 percent of the profits. Mr. Chandler testified that he had, to the best of his knowledge, he had suffered no financial loss or harm from his you have to have to defraud someone of property or money. So there's no wire fraud here. In terms of identification fraud, it requires that Thode have used the means of identification of another, so that would be Chandler and Middle Creek Construction, without lawful authority. And here, setting up the original cage code was by agreement. What occurred afterwards was at most a business disagreement, which bank account the Department of Defense would deposit the money into. The way Chandler found out about the changed bank account was when Thode brought him his 50 percent of the profits. So Chandler also never testified that Thode used his identification without his authority. The government tried to get him to indicate that perhaps Thode was still doing this and there was evidence on it, but he couldn't dispute Thode's claim that there were outstanding contracts that needed to be completed and that he continued to pay Duke Chandler. When he offered to put on evidence at trial to show that he continued to pay Duke Chandler until those contracts were completed, Duke Chandler said, don't do it. There's no point in that. I can't hardly remember anything. It was eight years ago. All I remember is our relationship ended. This is not fraud. This is the government's evidence. This is what they put on at trial. How did they come about the number, the amount of the restitution? Was it based upon some date that before this you had permission, after this you didn't have permission, and therefore this amount of money that you made was legitimate, and after this date when you had no permission and you continued to use that code, then there's fraud. And so did they calculate somehow the amount of restitution involved based upon the date where he had permission and the date after that? My understanding on the restitution is that they calculated that based on what Thode did not pay taxes on. So it's not based on whether there was fraud in his acquiring the income or not. The fact of the matter is all income he acquired, he didn't pay taxes on. So my understanding of their calculation was they were getting material from, documents from the Department of Defense to see how much was paid out on these contracts, and then they were getting, they got Thode's calculations, and then they also talked to a number of other companies and got their calculations, but it wasn't based on fraud. It was based on this is how much he made, this is how much tax he should have paid. How much the government assessed him in taxes that he didn't pay, plus the penalties I assume. Yes. Though I'm not 100 percent sure if the restitution includes the penalties. I'm not certain on that. Was there any evidence that the government's work was not completed, that he did not earn the money that he got from the government for legitimate work? No. In fact, the testimony is the opposite of that. The testimony was he made good aircraft parts. He was a good contractor. He made his deadlines. He was in the Air Force from 1985 to 1989 and then entered into the Air Force, into the aircraft production industry. So he's been involved in this for decades. He just doesn't like the government and doesn't want to pay his taxes. You've got some other issues. You better move on. Yes. Yes, I do, Your Honor. The other issue that I wanted to address, one of the other issues I wanted to address was the special condition of supervisory release, which is an occupational restriction. The judgment says that Thody shall refrain from directly or indirectly seeking or obtaining any government contract with the U.S. Department of Defense or any other government agency. The written condition imposes a blanket prohibition. When the district court orally pronounced this condition, it was worded differently, but it also had a limitation on it, which was unless approved by the probation officer. So at a minimum, the written condition imposes a greater deprivation because it doesn't allow for approval by the probation officer. So the written condition has to be amended to include that in. The government appears to agree with that because its entire argument on why this supervised release condition is okay is because of probation officer approval. However, even with that language, the condition is still an improper occupational restriction because it doesn't meet the requirements of Guideline 5F1.5, and the district court didn't make the findings on that. Occupational restrictions are allowed, but they are disfavored, and that's why you have these conditions set out in 5F1.5. And those conditions, 5F1.5 is set out in my opening brief, by the way, pages 49 to 50. Two of the factors that I mentioned is that the imposition of the restriction must be reasonably necessary to protect the public because there's reason to believe that absent this restriction, the defendant will continue to engage in the unlawful conduct. So Thody's unlawful conduct was not paying his taxes. This occupational condition doesn't guarantee or make it more likely that he's district court, it's on page 945 of the record, that requires Thody to follow all regulations of the Internal Revenue Service for payment of his future taxes. Now, admittedly, that's not the only concern that the court had or that the government had. It wasn't just that Mr. Thody wasn't paying his taxes. It was also that he was using companies in a way to distance himself from the income to try and hide himself from the IRS. And the government repeatedly in its brief mentions the need for verification so the probation officer can verify. Well, there are other standard conditions of supervised release that Mr. Thody is subject to that address those concerns. On page 946 of the record, standard condition five requires that he work. Standard condition six requires that he notify the probation officer of any change of employment. Standard condition number three requires that he answer any inquiries by the probation officer and that he follow all probation officer instructions. These standard conditions necessarily give the probation officer the authority to verify that Thody is working, what type of job he is doing, that he is following the rules. So the concern that the court, I believe, had in imposing this occupational restriction was that Thody pay his taxes and that the probation officer be able to track what he's doing for a living. As I said, occupational restrictions, though they're allowed, they're requirements is that it not be, that it be imposed to the minimum extent necessary. The commentary says occupational restrictions are to protect the public, not to punish the defendant. By taking away this man's livelihood, it's overly punitive. Does the conviction disqualify him from the work he was doing before providing parts to my brief research? Apparently, there are certain felony convictions that can disqualify you under the regulations from government contracts, but a conviction for failure to pay taxes is not necessarily one of them. He's not otherwise barred from your research? That is correct. And the way that government contracting works, the Department of Defense has these aircraft that they need parts for or they need the planes. And so they contract that out. Perhaps they contract it out to a large company like Halliburton. But in the end, there's a lot of subcontracting that takes place as well. They're subject to all of these regulations. But as I said, from my research, he is not barred from subcontracting or even contracting based on this conviction. That may be something that they take into account in deciding whether they want to hire him for a contract. Thank you, counsel. Okay. Thank you, ma'am. We have some time left for rebuttal. Okay. Mr. Rumberg. Good morning, Your Honors. May it please the Court, Mark Rumberg for the United States. I'd like to start addressing the 2T1.1 issue at first. Admittedly, the government was incorrect when it argued down below that the tax evasion itself was the illegal activity. We would submit to the Court, however, that does not end the inquiry as the Court interprets the That was a factual basis for the restitution. Is restitution we're talking about? No, sir. We're talking about the more than $10,000 from criminal activity, the two-point bump up. All right. I'm sorry. Maybe I misunderstood. Do you want me to go to the restitution? No, no, no, no. Go ahead. Okay. Yes, sir. The first thing I would like to address Judge Southwick's question, is the evidence addressed in this case? And I would submit to the Court that the evidence was addressed in this case, and Judge Garcia had the benefit of hearing all of the evidence. It wasn't in the PSR, but it was exposed at trial? Is that the point? Yes, sir. In this case, the defendant and Mr. Chandler had an agreement that the defendant would obtain contracts in the Middle Creek name and using a Middle Creek cage code or which split the profits. The money was supposed to go to the Wells Fargo account for Middle Creek. And according to the records that were presented at trial, the defendant switched the point of contact in December of 2005. At that point, this was discovered by Duke Chandler, and he told the defendant not to use the Middle Creek name in any way, shape or form. That's the record at 1583. Mr. Chandler reiterated this two months later, telling the defendant don't submit bids or contracts under Middle Creek. And regarding when these conversations took place in the defendant's brief, he argues that it was unclear as to when this conversation took place, but the defendant's own words belie that. When Mr. Chandler testified— The amount of the income that the Court found was derived from illegal activity is the amount of taxes that were owed. Is that right? I don't think the Court made a specific finding. I mean, it looks like the figures pretty well match up, don't they? I think the restitution comes from the amount of the— No, no, I'm talking about the illegal activity. No, I think the testimony at trial was the monies that were used, that the revenue agent looked at, at 2007 from the bank accounts, from the payments to the defendant's Middle Creek account of security services, not Duke Chandler's. After the change back in 2005, that's where the $37,800 comes from that supports the 2T1 enhancement. That's the income from illegal activity? Yes, sir. And we know that— See, I didn't think the judge made a finding on how much of the income he derived after he withdrew permission. I didn't see anything about that. I don't believe he did, Judge. Well, how can we support it then? Well, I think when you look at the record as a whole, including the facts that were there for the judge to look at, since he had the benefit of being there for the entire trial, we can show that in 2005, the split occurred based on Duke Chandler's testimony. And on cross-examination, he testified that the account was changed around 2005. The defendant, who was doing his own questioning, admits that's probably accurate. That's at the record of 1582. See, this wasn't even put to the district judge. It was not put at sentencing. So it doesn't seem like he even considered this in making this adjustment. We would submit to the court that the judge, having the benefit of hearing all the evidence, made the determined— Well, there's nothing in the record that indicates he considered it. There's nothing in the record you're right. Well, counsel, based on your exchange with Judge Davis, it seems to me you're—are you saying that it is necessary for this assumption to exist that the judge was partially considering that? Or is your point that since it's in the record, regardless of whether the judge was initially considering it, we can remand for him to consider this alternative basis for the sentence? I think both, Judge. I think this Court— Well, what case do you have to support the second, that if it's in the record, even though no one was presenting it to the district judge at the time, it's not in the PSR, you get another run at this through another theory? I would make the argument under Andino v. Ortega that the Court is looking at the Guidelines Novo and looking at the factual findings for clear error in this case, because the record has the support in it, the Court could make the finding that there was no clear error in this case, and that the application of the Guideline is correct. In the alternative, we would submit that this would go back down to the district court for him to make more specific findings. And you think there's enough in the record for him to make findings without any additional testimony or evidence to be presented as far as determining the amount as to when this negotiation between the individuals, when it stopped and when it became fraud, if it was fraud— Yes, sir. There's enough for the Court to calculate this amount? Yes, sir. I think because we have the admission of the defendant that the split-up occurred in 2005 and that in 2007 the case agent testified that, based on the records, that the money that went into the Middle Creek bank account that the defendant had sole authority over that Mr. Chandler didn't know about occurred in 2007, and that was $37,800, more than the year. And who was the victim? In this case, the victim would have been Mr. Chandler, because he was a victim of identity theft, that the defendant knowingly used the Middle Creek name and cage code number to obtain these funds in pursuit of committing another Federal offense, in this case tax evasion. It would also be wire fraud in the sense that the defendant created a scheme to defraud by using the Middle Creek name and cage code to defraud Duke Chandler of his 50 percent profit, and he did so by having the wires go from DFAS to the Federal Reserve to the banks, as testified by Mr. Culver of the Department of Defense. And that— Why should the government get another bite at the apple to present a brand-new theory to the District Court to give this enhancement? Judge, I don't think it's a second bite of the apple. While admittedly it wasn't discussed at sentencing, this was part of the trial, and it did show that the defendant was committing a crime of more than $10,000, that his funds were—he had more than $10,000 in funds that were criminally derived during this, and that the District Court was correct in doing that enhancement. Now, agreed, the factual findings weren't on the record, but if that's the case, then the court should be given a chance to make that correction. I mean, that one would be given on an entirely different basis. I mean, you'd be starting all over for the basis for the enhancement. But all of this information was in the trial record, so I would say that it wouldn't be a new basis, and I think if there's— It's a new basis from what the government asked the judge to give the enhancement for. Yes, sir. But perhaps the District Court was wiser than I was when I asked, and that we would submit— No, we don't have anything in the record indicating that. It may well be. And that's why I would suggest, Your Honor, that if the court can't affirm this, that the court should send it down so the District Court should be allowed to make the findings that were before, at the time it made these. Remind me, was there a transcript of sentencing where the district judge's reason was articulated orally for this enhancement? Did he say it's because of X, and now we're arguing why? No, sir. There really wasn't that type of discussion. The defendant objected. The court asked for my basis. I made the wrong basis and said it was the tax evasion, and the court overruled the objection. I mean, did the judge accept the PSR? Yes, sir. And PSR didn't say anything about this being the basis for the enhancement, and neither did the government, and so the enhancement was given, I would assume, based on the PSR. Wouldn't you? Yes, sir. Well, actually, not just that, but also that the court listened to the whole trial. The court heard how Mr. Chandler was cheated. He heard how the split happened in 2005 and that these funds that were used for illegal activity occurred in 2007, and it was over $37,000, and this was money that should have been split between Mr. Chandler and the defendant, according to their agreement. Otherwise, well, Mr. Chandler had said over a year before not to use his name in cage How much was the unpaid taxes on these five counts? The criminal amount was $162,000, I believe it's 037. The number, the extra $800 was the initial figures that was in the PSR, but those weren't the numbers that were proven at trial. There was a slight decrease. I believe the court asked whether or not that includes taxes and penalties. It does not. My colleagues may want to hear more about that, but if I could get you to turn to the actual sentence itself, which your opposing counsel did not address. My understanding of the PSR is that these were five offenses that were grouped, so there was one sentencing range, whatever it was, 41 to 50 months or something like that, and the district judge considered there were five counts and gave consecutive sentences totaling 90. I'm trying to figure out what the guidelines mean when they group offenses. According to the commentary on the grouping, it says, in essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines. So when looking at the PSR, I don't see count 1, 41 to 50 months, count 2, 41 to 50 months. They're grouped as one range, and if you consider them as one offense, is it appropriate then to break them back apart and give consecutive sentences when the rest of the guidelines seem to be considering these just as one offense with the maximum sentence being five years, not 90 months? Your Honor, I would say that under Section 3584, the court is allowed to give consecutive sentences, and as long as— They have to be consecutive. They have to be two sentences to run together, and that's what I am trouble with. Are there, in fact, two sentences potentially here, a separate sentence on count 1, a separate sentence on count 2, that you could run consecutively when the guidelines say when you're grouping they should be considered as one offense? Understood. And the court did say that these two, that he found the guidelines to be appropriate, 41 to 51 months, that these, in regard to count 1 and count 2, that they should be consecutive, and he went through the 3553 factors. I don't think that the fact that — and I understand what the Court is saying, that the guidelines are saying this should be one sentence, but 3584— One offense. I mean, I think you just used the wrong word, but one offense is what the guideline says it should — the commentary says it should be. Now, she hasn't made this argument, and I'm — I want your expertise on how this is supposed to work when you group offenses together. Experts on this bench, more than myself, I should ask them as well, but that will be later. I want your take on this. Sir, I wouldn't say that it is — it would necessarily be one separate offense because you still have the separate counts, and because you have the separate counts, just as the guidelines will sometimes allow for stacking of sentences when the guideline number isn't enough for one count. This case, the Court's allowed because the guidelines didn't take into consideration the defendant's personal characteristics, his refusal to accept the tax laws, his — the Court's concern that he was going to continue these criminal acts, that the guidelines were sufficient — or, excuse me, that the guidelines in and of itself addressed the need. So under 3584, the Court was allowed to give a consecutive sentence. Well, let me — you know, you look at 5G1.2. Yes, sir. That tells you when you can give consecutive sentences. Yes, sir. And I don't see any way that these five counts qualify to allow the judge to give consecutive sentences. These counts are grouped, and unless the statutory or guideline authorization to give consecutive sentences in multiple counts, I don't think — I don't see where the judge can give them. Now, it seems to me if this sentence can be supported, it would be on the basis of a variance. I mean, the judge considered that the 51 months was not enough because of these special circumstances. Now, I understand that, but I just don't see where the guidelines authorize a consecutive sentence for this — these five counts. And if you can point to me where it does, I'd like for you to do it. Well, I think, Judge, my argument would be more that under 3584, as long as the Court gives the reasons set forth under 3553, which would be the same reasons for granting the variance, in the end I think we'd come to the same place. But I think under 3584 that the Court is allowed to decide whether or not this concurrent or consecutive sentence is using 3553, and this Court both underset, sir, and — What does 3584 say that allows him to give a consecutive sentence? That 3584 allows any court to — Are you looking at it now? No, sir. Because I don't see anything in there that authorizes a consecutive sentence here. I think perhaps I'm wrong. However, it's my understanding that the Court may allow — may give consecutive sentences whenever it lists the 3553 factors. And in this case, it's up to the Court to make the determination. This Court has said previously that in properly calculated guidelines, a consecutive sentence enjoys a rebuttable presumption of reasonableness. Counsel, let me ask you if — again, we're not there, but if we decide consecutive sentences were not appropriate, doesn't the 5-year statutory maximum mean the 90-month sentence is in error? Because it can't vary above the statutory maximum. So unless they're consecutive sentences and can be approved on that basis, 60 months is the maximum. Well, the Court could still grant the upward variance. But only to 60 months, couldn't it? I think — Unless you can run consecutive — I may be wrong on what the maximum sentence is, but the PSR says the maximum sentence is 5 years. Well, for each count, but we have 5 counts. Well, but I've just indicated that the premise for my question is if consecutive sentences were in error, based on Judge Davis's reasoning, which we're still working with, I understand. I would still say that the Court can give an upward variance because the guidelines are advisory. And the Court, if it has a — The statute's not advisory, and it's 60 months maximum, correct? That's true, but there's 5 counts. So — We're running in circles, but I think we're — Yes, sir. We're misunderstanding each other. And I apologize. I just think that there's nothing precluding the defendant — or the Court from giving the defendant stacked sentences, if he so chooses. Well, how about the special condition for employment, an issue that the opposing counsel did address? I think that the Court was correct. In this case, the defendant, throughout his sentencing, throughout trial, he refused to believe that the tax laws applied to him and to the way he generated his income. He refused to accept the jurisdiction of the Court, even at sentencing. He earned his income, and he hid his income through nominees with Department of State, through subcontracts, and through other employment. He used nominees' companies and nominee bank accounts to hide his income. And when you read it together with the other special condition that he needs to pay his taxes, this makes perfect sense. The oral pronouncement guides under Bigelow. And in this case, the Court said the defendant shall refrain directly or indirectly the occupational activity in which he was engaged while he committed the incident of offense unless approved by the probation officer. Couldn't he have done that regardless of where he worked? Yes, sir. So why separate out the government contracts? Well, I think because, in this case, the Court was very specifically directing it to the way he earned his income and was breaking the law in charge. So he was very specific as to why he granted. Could he have given—could he have said, look, you can't work anywhere anymore and earn income because you won't pay your taxes on it? No, I don't think he could have said that. But what he could have said was you can't work anywhere without approving it with the probation officer. So the probation officer would know. So the probation officer could see what type of—to make sure the defendant was paying his taxes, to see what safeguards were in place with the employer, to see how the defendant was having his withholding done or how he was having his taxes paid in order to affect the other special condition that the defendant had to pay his taxes. The Court was speaking to this directly based on what the Court heard at trial, that this is how the defendant hid his income. So he could continue getting government contracts, but the probation office would supervise and make sure he paid his taxes? Yes, sir. Without saying he could not have government contracts? Right. All the oral pronouncement said was he couldn't have any of this work without getting the approval of the probation officer. It's not the probation officer that's going to not let him work, but the probation officer is going to know where he's getting his money from. So this was an appropriate condition. If it is modified with the written pronouncement, the written pronouncement narrows down the condition, and if it's read with probation officer approval, there would be nothing wrong with this. Let's assume the probation officer does know that he's contracting with the government. How does that make it less likely that he's going to cheat on his income taxes, any more unlikely than if he works for somebody else? Because that way the probation officer will know where he's working. He'll be able to talk to the contractor and say, how are you making sure he's paying his taxes? Are you giving him a 1099? Are you paying him under the table? And this will allow the probation officer to make sure he is paying his taxes because there will be some connectivity between the probation officer and the person paying the money or the company paying the money. Wouldn't it be just as necessary for the probation officer to know anybody he's working for to check and see if he's paying his taxes? I think the court could have legitimately put that in instead. I just don't understand why he would carve out the government. I don't see what difference it makes whether he's working for the government or Joe Blow as to whether he's going to pay his taxes on the income he makes. Well, the court said directly or indirectly what the activity that he was doing previously. All of that were government contracts, so I think that's why the court tried to narrow it down to that. Okay. All right. Thank you very much. Okay, Ms. Madewell, back to you. I would urge the court not to give the government the second bite of the apple. If the defendant had not objected in the district court, we would be up before the court on plein air review, which is a very difficult standard. In this case, however, the government gets to make a brand new argument before this court and then remand. In civil cases, this court has held that it won't entertain legal issues raised for the first time on appeal, except in extraordinary instances when the failure to consider it would result in a miscarriage of justice. Well, this is sort of the opposite in the civil case when there's an alternative basis in the record to support what the district judge did. Often we will affirm on that basis in civil cases, and I think that's the argument that the government's making here. In the record of the trial, there's evidence to support. You say there's not. The evidence goes the other way. So that's an alternative way to support this in its enhancement. So I think that's what we're looking at, not quite the argument you are making. Unfortunately, the civil case was the only case I could find to support my position, but I would urge again that there is a consideration of finality. The second bite. Yes. Legal principle. Yes, the second bite legal principle, that there is an interest in finality and that the defendant has a right when he's made the objections in the district court, to rely on that when he appeals it. Talk to me about section 3584 and whether that authorized a judge to give a consecutive sentence. And I apologize to the court. I did not address it in my briefing. I do not have it along with me, and I can't answer the court's question. I'll be happy, however, to 28J to research that issue and respond to the court. All right. Would you do that, please? Yes. Give us a letter in 10 days, and then 10 days for a response after that by the government. And then there's just one last thing. I don't want to take too much of the court's time. Under the special condition of supervised release, the prosecutor once again said that the condition allows the probation officer to verify, to call the employer, but the standard conditions that are there already allow that. Defendants who are on supervised release for any offense have to tell their probation officers where they're working, have to give the verification, and the probation officers call. That's just standard under being under supervised release. Is this a ripe issue? I mean, do we have to wait until he's out on supervised release, gets a government contract, and the probation officer says no, and then he brings it up that the probation officer is improperly not allowing him to have a government contract. No, this issue is ripe for the court. The district court had to the guideline 5F1.5 has very specific requirements for imposing an occupational restriction, and it's clear that those weren't met here. If the general rule would prevent him from working anywhere without reporting it to the probation officer, why is this a more onerous condition? Well, the general rule is that he has to notify the probation officer. Now, if the probation officer decides there's a problem with the employment, then it would go back to the district court. They could have a hearing on it on whether this is appropriate or not. But there isn't under the standard conditions, there isn't a you have to work and the probation officer must approve it. There's a condition you have to work, you have to notify the probation officer, you have to answer all inquiries by the probation officer, you must follow those instructions. So that carries along with it this verification concern that the government had in terms of where he's working and how the probation officer will know. But it doesn't carry with it that you have to get approval from the probation officer before you can get a job. It's just you have to notify the probation officer who will then verify it, unless there are any other questions. One thing I'd ask our presider, I think he may refer to a specific statute. I would be interested in 28J letters just addressing what is the validity of consecutive sentences in this case, whatever the grounds are, whether it's 35A4 or something else. Yeah, thank you. I would like that too. Okay, within 10 days. Yeah. Thank you, Your Honor. In response, 10 days after that, I think he said, you'll get notice from the clerk's office of what we asked. Okay, thank you very much.